OPINION
Appellant Carmen Chukes appeals a judgment of the Delaware County Court of Common Pleas, Juvenile Division, convicting her of child endangering (R.C. 2919.21)(B)(1)):
 ASSIGNMENTS OF ERROR "I. THE TRIAL COURT ERRED BY ALLOWING JACQUELINE AMICO TO TESTIFY AS A PEDIATRICIAN, BEING OUTSIDE OF THE AREA OF HER EXPERTISE AS A DOCTOR OF INTERNAL MEDICINE.
 "II. THE TRIAL COURT ERRED IN ALLOWING MOTHER'S TESTIMONY AS AN EXPERT WITNESS DUE TO THE TESTIMONY'S PREJUDICIAL AND BIASED EFFECT UNDER OHIO EVIDENCE RULE 403.
 "III. DURING ARGUMENTS FOR A DIRECTED VERDICT, THE PROSECUTION INFORMED THE TRIAL COURT OF THE INCORRECT STANDARD OF PHYSICAL HARM AS AN ELEMENT OF CHILD ABUSE UNDER OHIO REVISED CODE SECTION 2919.22 (B)(1).
 "IV. THE TRIAL COURT ERRED BY APPLYING THE WRONG STANDARD OF CHILD ABUSE FOR CHILD ENDANGERING UNDER OHIO REVISED CODE SECTION 2919.22 (B)(1) WHEN DELIBERATING ITS VERDICT.
 "V. THE JUDGMENT AND FINDING OF THE TRIAL COURT FINDING THE APPELLANT GUILTY OF CHILD ENDANGERING UNDER OHIO REVISED CODE SECTION 2919.22 (B)(1) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED."
Jacqueline Amico and Jeff McGowan are the parents of a daughter, Taylor, born January 7, 2000. Jacqueline Amico is a doctor, and when she returned to work after her daughter's birth, she hired a nanny to care for her daughter in their home. The nanny did not continue her employment, and the family subsequently hired appellant as their nanny. She began to work for the Amico-McGowans, on May 15, 2000.
Appellant worked in the home from Monday through Friday, arriving around 7:00 a.m., and staying until one of the couple arrived home, usually around 5:00 p.m.
The home is equipped with security cameras in four rooms. The system is arranged so that a VCR records the activity in all four rooms simultaneously. One of the cameras is located in the nursery. After appellant began caring for Taylor, Dr. Amico noticed a change in Taylor's disposition. Beginning in late August and early September of 2000, Taylor began having crying fits when placed in her car seat. In August of 2000, she began waking up in the middle of the night screaming. Around September 23, 2000, during a feeding, Taylor became upset, screaming, hyperventilating, and having a panic attack. This behavior was unusual for Taylor.
After Taylor had another panic attack on September 27, Dr. Amico and her husband decided to watch the video tape from the security system of that day's activities in their home. On the video tape, the couple saw appellant paddle Taylor, kick her while she was lying on the floor, and hit her with a hair brush. After watching the video tape, appellant's employment was terminated. Taylor's behavior subsequently improved.
The couple took Taylor to see a child psychologist several times, and also took her to a pediatrician. They noticed a bruise on Taylor's rib and flank area.
Appellant was charged with child endangering in violation of R.C. 2919.22
(B)(1). Following bench trial in the Delaware County Common Pleas Court, Juvenile Division, appellant was convicted as charged. She was sentenced to six months incarceration.
 I
Appellant first argues that the court erred in allowing Jacqueline Amico to testify as an expert, as she is not a board certified pediatrician, but rather, her area of practice and expertise is internal medicine.
A decision to admit the testimony of an expert is generally within the broad discretion of the trial court, and will not be disturbed absent a showing of an abuse of discretion. E.g. State v. Reiner (2000),89 Ohio St.3d 342, 2000-Ohio-190. Evid.R. 702 requires that for an individual to be qualified as an expert, the witness must have specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony.
Jacqueline Amico is a medical doctor, obtaining her medical degree in 1988 from the Wright State University School of Medicine. She completed a two-month rotation in pediatrics during medical school. She also completed a similar rotation in emergency medicine, and received training and lectures on the abuse of women and children. She completed a three-year residency in internal medicine at Riverside Methodist Hospital, and is licensed to practice medicine in Ohio. A doctor licensed to practice medicine in Ohio may see and treat patients of all ages.
Appellant's medical training qualified her to testify as an expert concerning the potential for injury caused from the mistreatment of Taylor, as witnessed on the video tape. She further was qualified to testify concerning changes in behavior of the child. The fact that she is not a board certified pediatrician does not render her unqualified to render an expert medical opinion, but rather goes to the weight to be given the evidence.
The first assignment of error is overruled.
 II
Appellant next argues that Dr. Amico's testimony should have been excluded under Evid.R. 403, as its probative value was outweighed by its prejudicial effect. She bases this claim on the fact that Dr. Amico was the child's mother, and therefore too emotionally tied to the proceeding to testify as an expert.
Evid.R. 403 requires that the unfair prejudice substantially outweigh the probative value of the evidence before exclusion is mandated. Oberlinv. Akron General Medical Center (2001), 91 Ohio St.3d 169,2001-Ohio-248. Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice, and emphasis must be placed on the word unfair. Id. Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Id. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect. Id.
Appellant has not demonstrated that Dr. Amico's expert testimony was unfairly prejudicial. While she clearly was emotionally tied to the proceedings as the mother of the child victim, her testimony does not reveal an appeal to the court to decide the case based on emotion rather than intellect. She testified as to her medical opinion of the change in behavior of the child, and also as to the potential for internal injuries caused by kicking a child in the manner in which appellant is viewed kicking the baby on the video tape. Appellant has not demonstrated that her testimony was unfairly prejudicial as defined by Evid.R. 403.
The second assignment of error is overruled.
 III IV
We address appellant's third and fourth assignments of error together, as both involve the same issue of the correct standard of harm to apply to a misdemeanor charge of child endangering in violation of R.C. 2919.22
(B)(1).
Endangering children is defined:
 "(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
(1) Abuse the child;
R.C. 2919.22 (B)(1)"
 R.C. 2919.22 (E)(2)(d) defines the degree of the crime in certain cases:
 "(d) If the violation is a violation of division (B)(1) of this section and results in serious physical harm to the child involved, a felony of the second degree."
Appellant argues that the court erred in failing to deliberate its verdict using a standard of serious physical harm and the court applied the wrong standard in considering the motion for directed verdict.
Appellant's argument is in direct opposition to the wording of the statute itself. Appellant was charged with and convicted of a misdemeanor offense, not a felony. The portion of the statute elevating the offense to one of a felony of the second degree if the violation causes serious physical harm would be of no consequence if the State was required to prove serious physical harm in every charge of endangering children under that section, even a misdemeanor charge. While "abuse" is not defined in the statute, Ohio Jury Instructions defines the term as any act which causes physical or mental injury, that harms or threatens to harm the child's health or welfare. In keeping with this definition, the court found that the conduct perpetrated by appellant constituted harm or a threat of harm to the child's health or welfare. The court did not err in concluding, both in determining the motion for directed verdict and in deliberating on its verdict, that the State was not required to prove serious physical harm as the standard for a misdemeanor charge of child endangering.
The third and fourth assignments of error are overruled.
 V
Appellant argues that the court's judgment convicting her of child endangering is against the manifest weight of the evidence.
Weight of the evidence concerns the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 1997-Ohio-52. In weighing the evidence, an appellate court sits as a thirteenth juror in resolving conflicts in the evidence. Id. The discretionary power to grant a new trial shall be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
In the instant case, there was a video tape demonstrating appellant's actions directed at the minor child. The tape shows appellant striking the child on the back for a prolonged period of time, with what appears to be a great deal of force. The use of her hand jolted the baby. The tape further shows appellant striking the baby on the head with a hair brush. After laying the baby on the floor, the video shows appellant kicking the child. The judgment of the court is not against the manifest weight of the evidence.
The fifth assignment of error is overruled.
The judgment of the Delaware County Court of Common Pleas, Juvenile Division, is affirmed.
By GWIN, J., and HOFFMAN, P.J. EDWARDS, J., concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant.